## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LISA THORSTENSON,
    *Plaintiff*,

    v.

SINOMAX USA, INC. AND JOHN AUSTIN
BELIVEAU,
    *Defendant.*

No. 3:19-cv-1809 (VAB)

## RULING AND ORDER ON MOTION TO REMAND TO STATE COURT
## AND MOTION TO DISMISS

Lisa Thorstenson ("Ms. Thorstenson") sued Sinomax USA, Inc. ("Sinomax") and John

Austin Beliveau ("Mr. Beliveau") in Connecticut Superior Court, claiming breach of contract,

breach of the covenant of good faith and fair dealing, promissory estoppel, and negligent

misrepresentation. Notice of Removal, Ex. A, ECF No. 1-1 (Nov. 15, 2019).

Sinomax subsequently removed the case to this Court based on diversity jurisdiction.

Notice of Removal, ECF No. 1 (Nov. 15, 2019). Mr. Beliveau did not join in the removal. *Id.*

Ms. Thorstenson moved to remand to state court, citing a lack of unanimity in the removal. Mot.

for Remand, ECF No. 16 (Dec. 2, 2019). Mr. Beliveau subsequently moved for dismissal. Mot.

to Dismiss, ECF No. 24 (Feb. 21, 2020).

For the following reasons, Ms. Thorstenson's motion to remand to state court is

**GRANTED** and Mr. Beliveau's motion to dismiss is **DENIED** as moot**.**

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations

Lisa Thorstenson is a marketing executive who advises companies on brand and business growth. Notice of Removal, Ex. A ¶ 4. She is a resident of Connecticut. *Id.* ¶ 1.

Sinomax was incorporated in Delaware and is headquartered in Houston, Texas. *Id.* ¶ 2. "Sinomax is a subsidiary of Sinomax Group Ltd. of Hong Kong." *Id.*

John Austin Beliveau is a resident of North Carolina. *Id.* ¶ 3.

In September of 2015, Ms. Thorstenson allegedly began a business, The K Alan Group, offering marketing services. *Id.* ¶ 5. Ms. Thorstenson allegedly "built up a client base for whom she provided marketing services." *Id.* ¶ 6. Revenue for this business allegedly "topped $100,000" and had "potential revenue opportunities of over $400,000" in 2017. *Id.*

In May of 2018, Ms. Thorstenson alleges that "Robert O'Connell, Sinomax's Executive Vice President [of] Marketing and Merchandising, offered [Ms.] Thorstenson employment as Sinomax's Vice President of Marketing [starting] in April 2019." *Id.* ¶ 8. This offer allegedly included "an annual salary of $225,000, plus bonus." *Id.*

Ms. Thorstenson alleges that "[a]s a condition of the offer of employment, Sinomax required [Ms.] Thorstenson to cease all consulting work she was performing via . . . The K Alan Group, and to immediately devote her full attention and energy to Sinomax." *Id.* ¶ 9.

Ms. Thorstenson alleges that Sinomax "represented and promised" that she would become a "full-time employee on or about April 1, 2019" if she "entered into an exclusive consulting agreement with Sinomax." *Id.* ¶ 10.

Allegedly "[i]n reliance on the representations of Sinomax personnel," Ms. Thorstenson "accepted the offer and ceased all non-Sinomax business she was conducting as a consultant and

entered into a consulting agreement with Sinomax dated May 14, 2018 (the 'Consulting Agreement')." *Id.* ¶ 11.

Ms. Thorstenson alleges that she "fully performed all of her obligations under the Consulting Agreement as required under the terms of the offer of employment." *Id.* ¶ 12. Ms. Thorstenson alleges that Sinomax "held [her] out as its Vice President of Marketing." *Id.*

Ms. Thorstenson alleges that "Mr. O'Connell, Frank Chen (CEO of Sinomax), and other Sinomax senior executives repeatedly approved of the quality of the work [she] performed." *Id.* ¶ 14.

Ms. Thorstenson alleges that "[d]uring the period [of] May 2018 through early May 2019, Sinomax made repeated assurances to [her] that it would uphold its promises and representations. . . and [that it] would hire [her] in April 2019 as a full-time employee in the position of Vice President of Marketing at a salary of $225,000 annually, with bonus and benefits commensurate with other similarly-situated Sinomax executives." *Id.* ¶ 15.

Ms. Thorstenson alleges that she "performed the consulting services for Sinomax primarily from her home office in Riverside, Connecticut." *Id.* ¶ 13.

Before the alleged offer of full-time employment was alleged to commence, "Sinomax hired . . . [Mr.] Beliveau as its Chief Operating Officer." *Id.* ¶ 16.

Ms. Thorstenson alleges that Mr. Beliveau "initially reiterated that Sinomax would perform in accordance with its representations and promises to [her]." *Id.* Ms. Thorstenson further alleges that Mr. Beliveau "indicate[d] that a written agreement of employment . . . was

but a formality. . . [and] announcement of her full-time employment status would be made to all employees of Sinomax in a planned all-employee email communication in April 2019." *Id.*

On March 31, 2019, Mr. Beliveau allegedly "attempted to renegotiate [Ms.] Thorstenson's starting salary as Vice President of Marketing from the agreed-upon $225,000 to a base of $175,000, with a bonus potential of $75,000." *Id.* ¶ 17. Ms. Thorstenson alleges that she rejected this renegotiation. *Id.*

Ms. Thorstenson alleges that "Sinomax refused to hire [her] as a full-time employee." *Id.* ¶ 18. She alleges that Mr. Beliveau "proceeded to cause Sinomax to hire a company (Austin Currier, LCC)" for marketing services. *Id.* Ms. Thorstenson further alleges that Mr. Beliveau and his wife are principals and owners of Austin Currier, LLC. *Id.*

Ms. Thorstenson allegedly protested Sinomax's "failure to deliver on its representations and promises." *Id.* ¶ 19. She alleges that she explained to Mr. O'Connell that "this failure to act by Sinomax" would cause her to be without income and business because she stopped her consulting business to work for Sinomax. *Id.* Ms. Thorstenson alleges that Mr. O'Connell "urged" Mr. Chen to honor the alleged obligation to hire Ms. Thorstenson, but Mr. O'Connell informed her that Mr. Chen's "position was simply that 'Sinomax [had] insurance for such things.'" *Id.* (correction in original).

Ms. Thorstenson asserts that she "repeatedly sought to have Sinomax honor its promises and representations." *Id.* ¶ 20.

## B.    Procedural History

On October 11, 2019, Ms. Thorstenson filed an action against Sinomax USA and John Austin Beliveau in Connecticut Superior Court, claiming breach of contract against Sinomax USA, breach of the covenant of good faith and fair dealing against Sinomax USA, promissory

estoppel against Sinomax USA, and negligent misrepresentation against Sinomax USA and Mr. Beliveau. Notice of Removal, Ex. A.

On October 15, 2019, as Ms. Thorstenson alleges, she served the Complaint on all defendants. Mem. in Supp. of Mot. for Remand, ECF No. 16-1 (Dec. 2, 2019). State Marshal Joseph L.A. Felner, Jr. attested that he effected service upon both defendants. Mot. for Remand, Ex. A, ECF No. 16-2, at 13 (Dec. 2, 2019). Sinomax was served "via service upon its Secretary by mailing to its business address via certified mail. Mem. in Supp. of Mot. for Remand at 2 (citing Mot. for Remand, Ex. A). Mr. Beliveau was served "by service upon the Secretary of State, accompanied by a mailing to his last known address via certified mail (in addition to his Sinomax business address as noted above)." *Id.* The certified mailing sent to Mr. Beliveau's last known address was returned to sender. Mot. for Remand, Ex. B, ECF No. 16-2 (Dec. 2, 2019).

On November 15, 2019, Sinomax removed the case to this Court. Notice of Removal. Mr. Beliveau did not sign, personally or through counsel, this removal action. *Id.*

On December 2, 2019, Ms. Thorstenson filed a motion to remand this case to state court, arguing that Mr. Beliveau had not consented to the removal. Mot. for Remand.

On December 23, 2019, Sinomax filed an Answer to Ms. Thorstenson's Complaint. Answer, ECF No. 17 (Dec. 23, 2019).

On December 23, 2019, Sinomax opposed Ms. Thorstenson's motion to remand. Reply in Opp'n to Mot. for Remand, ECF No. 18 (Dec. 23, 2019).

On January 2, 2020, Ms. Thorstenson filed a reply memorandum in further support of her motion to remand. Reply in Supp. of Mot. to Remand, ECF No. 19 (Jan. 2, 2020).

On February 21, 2020, Mr. Beliveau filed a motion to dismiss. Mot. to Dismiss.

On March 3, 2020, Ms. Thorstenson opposed Mr. Beliveau's motion to dismiss. Mem. in Opp'n to Mot. to Dismiss, ECF 26 (Mar. 3, 2020).

On March 17, 2020, Mr. Beliveau replied to Ms. Thorstenson's opposition to Mr. Beliveau's motion to dismiss. Reply to Mem. in Opp'n to Mot. to Dismiss, ECF 27 (Mar. 17, 2020).

On September 17, 2020, the Court held a hearing on Ms. Thorstenson's motion to remand and Mr. Beliveau's motion to dismiss. Min. Entry, ECF No. 31 (Sept. 17, 2020).

## II.    STANDARD OF REVIEW

### A.  Motion to Remand to State Court

A district court will remand a case, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "[T]he party asserting jurisdiction bears the burden of proving that the case is properly in federal court." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). The party asserting jurisdiction "must support its asserted jurisdictional facts with 'competent proof' and 'justify its allegations by a preponderance of the evidence.'" *Southern Air, Inc. v. Chartis Aerospace Adjustment Servs., Inc.*, C.A. No. 3:11-CV-1495 (JBA), 2012 WL 162369, at *1 (D. Conn. 2012) (quoting *United Food & Commercial Workers Union*, 30 F.3d at 305) (internal quotation marks omitted). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274

6

(2d Cir. 1994) (quoting *Somlyo v. J, Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991)).

### B.  Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted) (alteration in original)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss

for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

### A.  Motion to Remand

#### a.  Unanimity Rule

District courts in this Circuit strictly enforce the "unanimity rule." *Burr ex rel. Burr v. Toyota Motor Credit Co.,* 478 F. Supp. 2d 432, 437 (S.D.N.Y. 2006) ("This rule of unanimity is strictly interpreted and enforced.") (internal quotation marks omitted); *Edelman v. Page,* 535 F. Supp. 2d 290, 292 (D. Conn. 2008) (remanding case for failure to satisfy "unanimity rule" even though "it makes the most sense for this court to adjudicate the issues" and remand would "constitute[ ] a waste of the State of Connecticut's judicial resources"); *Nat'l Waste Assocs., LLC v. TD Bank, N.A.*, C.A. No. 3:10–CV–289 (CSH), 2010 WL 1931031, at *3 (D. Conn. May 12, 2010) (noting "the well-settled precedent in the Second Circuit of strictly enforcing the 'unanimity rule' in removal cases"); *Patrick v. Porter–Cable Corp.,* C.A. No. 3:10–CV–131 (MRK), 2010 WL 2574121, at *3 (D. Conn. Apr. 1, 2010) ("Courts have very little discretion—

8

if any—to forgive a failure to comply with the rule of unanimity."). Thus, courts "construe the removal statute narrowly, resolving any doubts against removability." *Lupo,* 28 F.3d at 274 (quoting *Somlyo,* 932 F.2d at 1045–46).

When removing a state case with multiple defendants, each defendant must independently consent to removal to federal court. *See Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012) ("Although we have not yet advised what form a consent to removal must take, we agree with the district court that the remaining defendants must independently express their consent to removal."). And the "[f]ailure of any defendant to provide its written consent within the applicable thirty-day period renders the petition for removal untimely." *Edelman*, 535 F. Supp. 2d at 293.

There are three exceptions to the "unanimity rule": "(1) the non-joining defendants have not been served with service of process at the time the removal petition is filed; (2) the non-joining defendants are merely nominal or formal parties; [or] (3) the removed claim is a separate and independent claim as defined by 28 U.S.C. § 1441(c)." *Edelman,* 535 F. Supp. 2d at 293 (quoting *Snakepit Auto., Inc. v. Superperformance Int'l, LLC,* 489 F. Supp. 2d 196, 201–02 (E.D.N.Y. 2007)) (alteration in original).

Ms. Thorstenson asserts that because Mr. Beliveau did not consent to removal, the unanimity rule is not satisfied and the case must be remanded to state court. Mot. For Remand 1. Sinomax argues that Mr. Beliveau was not served at the time of removal and thus, his consent was not required. Def.'s Statement Regarding Removal, ECF No. 4 (Nov. 15, 2019); Reply in

Opp'n to Mot. for Remand 1–2. Sinomax does not contend that Mr. Beliveau did provide written

consent.

Given the Second Circuit's strict enforment of the unanimity rule, this Court must

remand due to the lack of unanimity unless one of the enumerated exceptions has been triggered.

In this case, only the first exception—the non-joining defendants have not been served at the

time of removal—may apply. Therefore, remand turns on whether service of process on Mr.

Beliveau was adequate.

### b.  Sufficiency of Service

For service of nonresidents, Connecticut's long-arm statute states:

> Any nonresident individual . . . over whom a court may exercise
> personal jurisdiction, as provided in subsection (a) of this section,
> shall be deemed to have appointed the Secretary of the State as its
> attorney and to have agreed that any process in any civil action
> brought against the nonresident individual. . . may be served upon
> the Secretary of the State and shall have the same validity as if
> served upon the nonresident individual. . . The process shall be
> served by the officer to whom the same is directed upon the
> Secretary of the State by leaving with or at the office of the Secretary
> of the State, at least twelve days before the return day of such
> process, a true and attested copy thereof, and by sending to the
> defendant at the defendant's last-known address, by registered or
> certified mail, postage prepaid, return receipt requested, a like true
> and attested copy with an endorsement thereon of the service upon
> the Secretary of the State.

Gen. Conn. Stat. § 52-59b(c). Subsection (a) of this section details the circumstances under

which a Connecticut court may exercise personal jurisdiction over a nonresident. Gen. Conn.

Stat. § 52-59b(a).

The Connecticut long-arm statute "does not require actual delivery, but the mere placing

of the documents in the mail." *Morgan Chase Bank, Nat'l Ass'n v. Ryder*, C.A. No.

FSTCV186038553S, 2019 WL 4060166, at *3 (Conn. Super. Ct. Aug. 6, 2019) (citing *Aurora*

*Loan Servs., LLC v. Condron,* 181 Conn. App. 248, 264 (2018)).

> Connecticut relies on the mailbox rule and the presumption of
> delivery arises when the document is placed in the mail system.
> Under the presumption of delivery rule of Connecticut, proof
> of delivery and the signing of the return receipt is not a requirement
> in order to satisfy notice under Connecticut law.

*Id.* at *3 (citing *Echavarria v. Nat'l Grange Mut. Ins. Co.,* 275 Conn. 408, 418 (2005)). "A

properly stamped and addressed letter that is placed into a mailbox or handed over to the United

States Postal Service raises a rebuttable presumption that it will be received." *Echavarria,* 275

Conn. at 418. Under this "mailbox rule," "the burden then shifts to the [party arguing lack of

service] to present evidence that rebuts this presumption." *Id.; Daniels v. Statewide Grievance*

*Comm.*, 72 Conn. App. 203, 212 (2002) (concluding that the plaintiff did not overcome a

presumption of service when he provided "no evidence to support his allegation that he did not

receive a copy of the complaint except his own testimony that he was having trouble getting mail

delivered and the absence of a copy of the certified mail receipt in the record").

Ms. Thorstenson has demonstrated service on all of the defendants. Mem. in Supp. of

Mot. for Remand. Specifically, Mr. Beliveau was served "by service upon the Secretary of State,

accompanied by a mailing to his last known address via certified mail" (in addition to his

Sinomax business address as noted above). Mem. in Supp. of Mot. for Remand at 2 (citing Mot.

for Remand, Ex. A). Ms. Thorstenson provided receipts of these mailings and State Marshal

Joseph L.A. Felner, Jr. attested to this service. Mot. for Remand, Ex. B; Mot. for Remand, Ex. A.

This service of process is in compliance with the requirements for service of nonresidents

outlined in Gen. Conn. Stat. § 52-59b. Although the certified mailing was returned to sender, the

Connecticut presumes receipt of service when a filing is placed in the mail. *Echavarria,* 275 Conn. at 418.

The burden shifts to Sinomax to present evidence to rebut this presumption. *Id.*

Sinomax does not argue that Mr. Beliveau did not receive of process under the requirements outlined in Subsection C of the Connecticut long-arm statute. Instead, Sinomax argues that Mr. Beliveau cannot properly be served under Gen. Conn. Stat. § 52-59b(c) because Connecticut does not have personal jurisdiction over Mr. Beliveau, as required by Subsection (a) of the same statute. Reply in Opp'n to Mot. for Remand at 6. Sinomax also argues that Mr. Beliveau is protected from the long-arm statute by the "fiduciary shield doctrine." *Id.* at 11.

Sinomax's arguments regarding personal jurisdiction over Mr. Beliveau do not cure a lack of unanimity because "[r]emoving [d]efendants may not assert [a lack of personal jurisdiction] defense on behalf of [a] co-[d]efendant. *Zhaoyin Wang v. Beta Pharma, Inc.*, C.A. No. 3:14-CV-01790 (VLB), 2015 WL 5010713, at \*12 (D. Conn. Aug. 24, 2015). "Personal jurisdiction 'represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.'" *Id.* (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982)). "It is therefore, 'first of all an individual right,' which is waivable. *Id.* (quoting *Ins. Corp. of Ireland, Ltd.,* 456 U.S. at 703). "As a result, courts in [the Second] Circuit reject efforts by co-defendants to assert the

defense on behalf of other defendants." *Id.*

The issue of whether a Connecticut state court has personal jurisdiction over Mr. Beliveau must be raised by Mr. Beliveau. *See Bedminster Fin. Grp., Ltd. v. Umami Sustainable Seafood, Inc.,* C.A. No. 12-CIV-5557 (JPO), 2013 WL 1234958, at \*8 (S.D.N.Y. Mar. 26, 2013) ("[B]ecause 'defects concerning service of process are waivable' by the served party, 'removing

defendants cannot complain about any alleged deficiencies about service of process on non-

consenting defendants, and removing defendants' objections to service of process on non-

consenting defendants are not grounds for failing to secure non-consenting defendants' joinder in

the removal notice.'") (quoting *In re Pharm. Indus. Average Wholesale Price Litig.,* 431

F.Supp.2d 109, 122 (D. Mass. 2006)). And since Mr. Beliveau failed to consent to removal, he

now must raise that defense, if he so desires, before the Connecticut Superior Court. *See*

*Marquette Bus. Inc. v. America's Kitchen, Inc.,* C.A. No.3:09-CV-1937-D, 2010 WL 1711767, at

*3 (N.D. Tex. 2010) ("[A]lthough service may not be effective for purposes of obtaining *in*

*personam* jurisdiction over the defendant, it may be effective for purposes of triggering the

consent requirement of the rule of unanimity.")

    Sinomax notes a possible cure for the lack of unanimity in its reply to the motion for

remand:

> Although . . . Beliveau has not been served, he has confirmed to
> counsel for Sinomax, without entering an appearance and while
> reserving fully all defenses and defensive arguments, including
> without limitation with respect to defective or otherwise ineffective
> service and with respect to lack personal jurisdiction, that he is
> opposed to remand. Beliveau desires that this action proceed in this
> Court, and if he had been properly served at the time of removal, he
> would have at the time consented to or joined in removal.

Reply in Opp'n to Mot. for Remand at 2 n. 1. These informal assertions, however, made through

other defendants do not satisfy the unanimity rule. *Edelman*, 535 F. Supp. 2d at 292 ("It is

insufficient for a defendant who has not signed the removal petition to merely advise the

removing defendant that it consents to removal and that the removing defendant may represent

such consent to the Court on its behalf.").[1]

---

[1]At oral argument, Sinomax also argued that requiring unanimity where there is inadequate service burdens one co-defendant by demanding that they collaborate with another co-defendant who, through no fault of either defendant,

Because of Mr. Beliveau's failure to consent to removal, this case must be remanded to state court.

### B.  Motion to Dismiss

As this case must be remanded to state court, this Court no longer has jurisdiction and Mr. Beliveau's motion to dismiss is denied as moot.

## IV.  CONCLUSION

For the foregoing reasons,  Ms. Thorstenson's motion for remand to state court is **GRANTED**, and Mr. Beliveau's motion to dismiss is **DENIED** as moot.

The Clerk of Court is respectfully directed to remand this case to the Superior Court for the Judicial District of Stamford/Norwalk at Stamford, and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of September, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

has not been properly apprised of the lawsuit. Min. Entry, ECF No. 31. In this case, however, Mr. Beliveau is Chief Operating Officer of Sinomax, well aware of the lawsuit, and even relies on similar counsel to defend him.